UNITED STATES DISTRICT COURT
NOTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COMERICA BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. |
| - vs - | ) | Hon.    FILED: MAY 19, 2008 |
| | ) | 08 cv 2898    JH |
| BERNARD M. GEERS, and | ) | JUDGE HOLDERMAN |
| HELEN A. GEERS, a husband | ) | MAGISTRATE JUDGE COLE |
| and wife, jointly and severally, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR JUDICIAL FORECLOSURE
## AND OTHER RELIEF

Plaintiff, Comerica Bank, brings this complaint for judicial foreclosure and other

relief against Bernard M. Geers and Helen A. Geers, a husband and wife, alleging:

1.    Comerica Bank is a national bank association, formed and organized

under the laws of the State of Texas.

2.    Bernard M. Geers is an individual, who, upon information and belief,

resides in Chicago, Illinois.

3.    Helen A. Geers is an individual, who, upon information and belief, resides

in Chicago, Illinois.

4.    This Court has subject matter jurisdiction over this dispute pursuant to 28

USC § 1332 because the matter in controversy exceeds the sum of $75,000.00, exclusive

of interest and costs, and the parties are citizens of different states.

5.    This Court has personal jurisdiction over the parties pursuant to 735 ILCS

5/2-209.  Venue is proper in this judicial district pursuant to 735 ILCS 5/2-101.

6.     Plaintiff files this complaint to foreclose the mortgage (hereinafter "Mortgage"), hereinafter described and joins the following parties as defendants: Bernard M. Geers and Helen A. Geers, a husband and wife.

7.     Attached as Exhibit "A" is a copy of the Mortgage, attached as Exhibit "B" is a copy of the Note secured thereby, and attached as Exhibit "C" are copies of the Unconditional Guarantees executed by the defendants.

8.     Information concerning the Mortgage:

(A)     Nature of instrument:  mortgage.

(B)     Date of Mortgage:  March 18, 2004.

(C)     Name of mortgagor:  Bernard M. Geers and Helen A. Geers.

(D)     Name of the mortgagee:  Comerica Bank.

(E)     Date and place of recording:  April 1, 2004; Cook County Register of Deeds.

(F)     Identification of recording:  Document #0409249213

(G)     Interest subject to the mortgage:  fee simple.

(H)     Amount of original indebtedness, including subsequent advances made under the mortgage:  $500,000.00.

(I)     The legal description and common address of the mortgaged real estate are:

Lot 9 in Block 3 in Albertine Crane's Subdivision of the South ¾ of the West ¼ of the Southwest ¼ of Section 28, Township 39 North, Range 14, East of the Third Principal Meridian, in Cook County, Illinois.

Permanent Index No.:  17-28-318-027

Commonly known as:  2920 Emerald

2

(J)     Statement as to default:  the date of the default is February 18, 2008; the current unpaid principal balance is $354,270.09; per diem interest is accruing at the rate of $70.36872; the plaintiff/mortgagee has sent a letter to the mortgagors, demanding payment in full of the note, but they have ignored the demand.

(K)     The name of the present owner of the real estate is:  Bernard M. Geers and Helen A. Geers.

(L)     No defendants other than the fee simple owners have been joined as defendant, as it appears as if there are no other persons or entities who have an interest in or lien on the mortgage real estate.

(M)     The names of the defendants claimed to be personally liable for deficiency, if any, are:  Bernard M. Geers and Helen A. Geers.

(N)     Capacity in which plaintiff brings this foreclosure: plaintiff is the legal holder of the indebtedness.

(O)     Facts in support of request for attorneys' fees and of costs and expenses:  Pursuant to paragraph 16 of the Mortgage, Bernard Geers and Helen Geers agreed to reimburse Comerica Bank all attorneys' fees and costs and expenses it incurs in connection with obtaining a judgment of foreclosure and sale of the mortgaged real estate.

(P)     The names of defendants whose right to possess the mortgaged real estate, after the confirmation of the sale of foreclosure, is sought to be terminated are: Bernard M. Geers and Helen A. Geers.  Mr. and

Mrs. Geers granted Comerica Bank a mortgage on the real estate to secure the performance of the obligation under the foregoing described note.  They agreed that in the event of a default on the note, Comerica Bank is entitled to foreclose on its mortgage and, through a judicial sale of the real estate, to satisfy and discharge the indebtedness.

### REQUEST FOR RELIEF

Plaintiff requests:

(i)    A judgment of foreclosure and sale.

(ii)    A personal judgment for a deficiency.

(iii)    An order granting possession.

(iv)    A judgment for attorneys' fees, costs, and expenses.

s/Dean J. Groulx
Simon, Galasso & Frantz, LLC
111 E. Wacker Drive, Suite 2606
Chicago, IL 60601
(312) 228-0550 – Office
(312) 228-0549 – Facsimile
dgroulx@sgfattorneys.com
6291336

Dated:  May 13, 2008

# EXHIBIT A –
# MORTGAGE DATED MARCH 18, 2004



Doc#: 0409249213
Eugene "Gene" Moore  Fee: $52.00
Cook County Recorder of Deeds
Date: 04/01/2004 03:48 PM Pg: 1 of 15

## MORTGAGE

This Mortgage is made on ___March 18___, 2004, between **Bernard M. Geers and Helen A. Geers, husband and wife, in joint tenancy** (collectively, the "Mortgagor"), who resides at 519 Sixth Street, Lemont, Illinois and **Comerica Bank**, Its Successors and/or Assigns, whose address is: Attention:  SBA Department, MC7355, 3551 Hamlin Road, Auburn Hills, Michigan 48326 ("Mortgagee").

FTC 6705540    Document  1 of 02

For value received, Mortgagor mortgages and warrants to Mortgagee the property situated in the City of Chicago, County of Cook, Illinois, with a street address of 2920 Emerald, and legally described as shown on the attached Exhibit A; together with the easements, rights-of-way, licenses, privileges, hereditaments, and appurtenances belonging to the property, and all the rents, issues, leases, and profits, the interest of Mortgagor in the property, either at law or in equity, all buildings, structures, and improvements, and all fixtures located in, on, or affixed to the property, and used or usable in connection with the operation of the property (all of the above are collectively referred to in this Mortgage as the "Premises").

The amount of this Mortgage is Five Hundred Nine Thousand and 00/100 Dollars ($509,000.00).

This Mortgage is given to secure the following:

a.    Payment of the Indebtedness evidenced by the personal Guaranties of Keith D. Geers, Linda S. Geers, Bernard M. Geers and Helen A. Geers dated on even date hereof, (the "Guaranty"), guaranteeing the payment of a Promissory Note dated on even date hereof, given in connection with a loan from Comerica Bank to **Aqua-Pets L.L.C.** (hereinafter "Borrowers") in the principal sum of Five Hundred Nine Thousand and 00/100 Dollars ($509,000.00) (the "Note") payable with interest at the rates and times more particularly described in the Note, the terms and conditions of which are incorporated by reference herein;

b.    Payment by Mortgagor to Mortgagee of all sums expended or advanced by Mortgagee pursuant to any term or provision of this Mortgage;

c.    Performance of the covenants, conditions, and agreements contained in this Mortgage, in the Guarantees, in the Note, and in any security agreement given in connection with this transaction, and in any other documents securing the indebtedness shown above; and

d.  All other indebtedness and obligations of Mortgagor presently or subsequently owing to Mortgagee, including but not limited to all future advances under this Mortgage or on the Guarantees, Note and under all notes, loan agreements, security agreements, pledge agreements, assignments, mortgages, leases, guarantees, and any other agreements, instruments, or documents previously or subsequently signed by Mortgagor, whether the indebtedness or obligations are direct or indirect, absolute or contingent, primary or secondary, or related or unrelated to the Premises or the transaction of which this Mortgage is a part, and any and all partial or full extensions or renewals of this indebtedness or other indebtedness and obligations (all of the foregoing are collectively referred to as the "Indebtedness").

Mortgagor warrants, covenants, and agrees that:

1.  <u>Homestead.</u>  Mortgagor RELEASES AND WAIVES all rights under and by virtue of the homestead exemption laws of the State of Illinois.

2.  <u>Title.</u>  Mortgagor is lawfully seized of the Premises in fee simple. Mortgagor has the right and power to mortgage and warrant the Premises as set forth in this Mortgage. The Premises are free from all liens and encumbrances except liens *and rights of the holders of the contracts and instruments secured by any* instruments that may be described in "Exhibit B" to this Mortgage (the "Permitted Encumbrances"), and except for those liens, easements and restrictions of record disclosed in Freedom Title Corporation, title commitment no. 6705540, effective date of January 16, 2004, (and as revised and/or updated), relating to the Premises. Mortgagor will defend the Premises against all claims and demands.

3.  <u>Payment of Indebtedness.</u>  Mortgagor will pay all Indebtedness when due, including the principal and interest, as provided in the Mortgage, Guarantees and Note.

4.  <u>Taxes and Assessments.</u>  Until the Indebtedness is fully satisfied, Mortgagor will pay all taxes, assessments, and other similar charges and encumbrances levied on the Premises before they become delinquent, and will promptly deliver to Mortgagee, without demand, receipts showing the payment.

5.  <u>Tax and Insurance Escrow.</u>  On request, at the option of Mortgagee, Mortgagor will pay to Mortgagee monthly, in addition to each monthly payment required by this Mortgage or under the Note, a sum equivalent to one-twelfth of the amount estimated by Mortgagee to be sufficient to enable Mortgagee to pay, at least 30 days before they become due, all taxes, assessments, and other similar charges levied against the Premises, and all insurance premiums on any policy or policies of insurance required by this Mortgage. The additional payments may be commingled with the general funds of Mortgagee, and no interest shall be payable on those payments. On demand by Mortgagee, Mortgagor will deliver and pay over to Mortgagee any additional sums necessary to make up any deficiency in the amount necessary to enable Mortgagee to fully pay when due

any of the preceding items. In the event of any default by Mortgagor in performing any of the terms of this Mortgage, Mortgagee may apply against the Indebtedness, in the manner that Mortgagee may determine, any funds of Mortgagor then held by Mortgagee under this paragraph.

6.    Change of Law. If, after the date of this Mortgage, any statute or ordinance is passed that changes in any way the laws now in force for the taxation of mortgages or mortgaged debts or the manner in which those taxes are collected, so as to affect this Mortgage or the interest of Mortgagee, the whole of the principal sum secured by this Mortgage, with all interest and charges, if any, at the option of Mortgagee, shall become due and payable.

7.    Insurance. Mortgagor shall keep all buildings, structures, improvements and fixtures and the rents of the Premises insured against loss and damage against (i) fire and those perils covered by all-risks coverage insurance; (ii) perils covered by public liability insurance; (iii) perils covered by flood insurance, but only if the Premises are at any time located in flood hazard area as identified by the Secretary of Housing and Urban Development and flood insurance is available under the National Flood Insurance Act of 1968 as amended by the Flood Disaster Protection Act of 1973 and any amendments to such Acts; (iv) such other risks as Mortgagee may from time to time reasonably require to fully protect its security. The amounts of all insurance shall be as Mortgagee shall from time to time reasonably determine, with the minimum amount of all fire and all-risks coverage and flood insurance equal to an amount which is in excess of the amount of the Indebtedness and without co-insurance. The insurer or insurers shall be such as may from time to time be approved by Mortgagee. The proceeds of the policies shall be payable to Mortgagee under a standard mortgage clause. The policies of all such insurance and all renewals thereof together with receipts evidencing payment in full of the premiums thereon, shall be delivered promptly to Mortgagee. The terms and conditions of all policies and endorsements thereto shall be in form and content satisfactory to Mortgagee. All of the required policies of insurance shall contain provisions satisfactory to Mortgagee prohibiting cancellation, alterations, changes, amendments, modification, deletions or reductions in coverage either at the instance of the Mortgagor or of the insurance company issuing the policy without at least thirty (30) days prior written notice having been given to Mortgagee. In the event Mortgagor shall attempt to cancel, alter, change, amend, modify, delete or reduce the coverage of any required policy of insurance without the prior written consent of Mortgagee, such act shall constitute an event of default hereunder. In the event of loss or damage, the proceeds of the insurance shall be paid to Mortgagee alone to the extent of the Indebtedness. Mortgagee is authorized to adjust and compromise such loss without the consent of Mortgagor, to collect, receive and receipt for such proceeds in the name of Mortgagee and Mortgagor and to endorse Mortgagor's name upon any check or draft in payment thereof. The power granted hereby shall be deemed to be coupled with an interest and shall be irrevocable. The insurance proceeds shall be applied toward reimbursement of all costs and expenses of Mortgagee in collecting the proceeds, including reasonable attorneys' fees, and toward the payment of all

3

amounts payable by Mortgagor to Mortgagee hereunder, and toward the payment of the Indebtedness or any portion thereof, whether or not then due or payable. If insurance proceeds are applied to the Indebtedness, such application shall be to the last maturing balance due under the Note. All of the policies of insurance shall be held by Mortgagee as additional security hereunder and, in the event of sale of the Premises on foreclosure, the ownership of all policies of insurance and the right to receive the proceeds of any insurance payable by reason of any loss theretofore or thereafter occurring shall pass to the purchaser at the sale and Mortgagor hereby appoints Mortgagee its attorney-in-fact, in Mortgagor's name, to assign and transfer all such policies and proceeds to such purchaser.

8.  <u>Maintenance, Repair and Compliance with Law.</u>  Mortgagor shall (a) promptly repair or restore, any portion of the Premises which may become damaged whether or not proceeds of insurance are available or sufficient for that purpose; (b) keep the Premises in good condition and free from waste; (c) pay all operating costs of the Premises; (d) complete, within a reasonable time, any improvements at any time in the process of erection upon the Premises; (e) comply with all requirements of law relating to the Premises or any part thereof by any governmental authority; (f) refrain from any action and correct any condition which would increase the risk of fire or other hazard to the Premises; (g) comply with any restrictions of record with respect to the Premises and the use thereof; and observe and comply with any conditions necessary to preserve and extend any and all rights, licenses, permits (including without limitation zoning, variances, special exceptions and nonconforming uses), privileges, franchises and concessions that are applicable to the Premises or its use and occupancy; and (h) cause the Premises to be managed in a competent and professional manner.  Without the prior written consent of the Mortgagee, Mortgagor shall not cause, suffer or permit any (i) material alterations of the Premises except as permitted or required to be made by the terms of any leases approved by Mortgagee; (ii) change in the intended use or occupancy of the Premises; (iii) change in the identity of the person or firm responsible for managing the Premises; (iv) zoning reclassification with respect to the Premises; (v) unlawful use of, or nuisance to exist upon, the Premises; or (vi) granting any easements, licenses, covenants, conditions or declarations of use against the Premises, other than use restrictions contained or provided for in leases approved by Mortgagee.

9.  <u>Condemnation and Eminent Domain.</u>  All awards (the "Awards") made to the present, or any subsequent, owner of the Premises, by any governmental or other lawful authority for the taking, by condemnation or eminent domain, of all or any part of the Premises, are hereby assigned by Mortgagor to Mortgagee. Mortgagee may collect the Awards from the condemnation authorities, and may give appropriate acquittances therefore.  Mortgagor shall immediately notify Mortgagee of the actual or threatened commencement of any condemnation or eminent domain proceedings affecting any part of the Premises and shall deliver to Mortgagee copies of all papers served in connection with any such proceedings.  Mortgagor shall make, execute and deliver to Mortgagee, at any

time upon request, free of any encumbrance, any further assignments and other instruments deemed necessary by Mortgagee for the purpose of assigning the Awards to Mortgagee. If any portion of or interest in the Premises is taken by condemnation or eminent domain, and the remaining portion of the Premises is not, in the judgment of Mortgagee, a complete economic unit having equivalent value to the Premises as it existed prior to the taking, then, at the option of the Mortgagee, the entire Indebtedness shall immediately become due. After deducting from the Award for such taking all of its expenses incurred in the collection and administration of the Award, including attorney's fees, Mortgagee shall be entitled to apply the net proceeds toward repayment of such portion of the Indebtedness as it deems appropriate without affecting the lien of this Mortgage.

10.   Mortgagee Expenses. If Mortgagor fails to meet any of its obligations under this Mortgage, Mortgagee shall have the right, but not the obligation, to perform in the place of Mortgagor. If Mortgagee incurs or expends any sums, including reasonable attorneys' fees, whether or not in connection with any action or proceeding, to (a) sustain the lien of this Mortgage or its priority, (b) protect or enforce any of Mortgagee's rights, (c) recover any part of the Indebtedness,(d) meet an obligation of Mortgagor under this Mortgage, or (e) collect insurance or condemnation proceeds, then those sums shall become immediately due and payable by Mortgagor with interest at the default rate set forth in the Note from the date of Mortgagee's payment until paid by Mortgagor. The sums expended in this manner by Mortgagee shall be secured by this Mortgage and be a lien on the Premises prior to any right, title, or interest on the Premises attaching or accruing subsequent to the lien of this Mortgage.

11.   Assignment of Rents/Observance of Lease Assignment. *To* further secure the Indebtedness, Mortgagor hereby assigns to Mortgagee all of the rents, leases and income now or hereafter due under any leases agreed to by Mortgagor or the agents of Mortgagor or which may be made or agreed to by Mortgagee under the powers herein granted, it being the intention hereby to establish an absolute transfer and assignment of all such leases, rents and income thereunder, to Mortgagee. Mortgagor hereby irrevocably appoints Mortgagee its attorney-in-fact *(this power of attorney and any other powers of attorney granted herein are powers coupled with an interest and cannot be revoked, modified or altered without the written consent of Mortgagee)* with or without taking possession of the Premises as provided in Section 18 hereof, to lease any portion of the Premises to any party upon such terms as Mortgagee shall determine, and to collect all rents due under each of the leases, with the same rights and powers *and subject to the same immunities, exoneration of liability and rights of recourse* and indemnity as Mortgagee would have upon taking possession pursuant to the provisions of Section 18 hereof. Mortgagor represents that no rent has been or will be paid by any person in possession of any portion of the Premises for more than one installment in advance and that the payment of none of the rents for any portion of the Premises has been or will be waived, reduced or otherwise *discharged or compromised by Mortgagor. Mortgagor waives any rights of set-*off against any person in possession of any portion of the Premises. Mortgagor

agrees that it will not assign any of the rents or profits of the Premises, except to a purchaser or grantee of the Premises. Nothing herein contained shall be construed as constituting Mortgagee a mortgagee in possession in the absence of the taking of actual possession of the Premises by Mortgagee pursuant to Section 18 hereof. Mortgagor expressly waives all liability of Mortgagee in the exercise of the powers herein granted Mortgagee. Mortgagor shall assign to Mortgagee all future leases upon any part of the Premises and shall execute and deliver, at the request of Mortgagee, all such further assurances and assignments in the Premises as Mortgagee shall from time to time require. Although the assignment contained in this Section is a present assignment, Mortgagee shall not exercise any of the rights or powers conferred upon it by this Section until a default shall exist under this Mortgage. Within thirty (30) days of Mortgagee's written demand, Mortgagor will furnish Mortgagee with executed copies of each of the leases and with estoppel letters from each tenant in a form satisfactory to Mortgagee. If Mortgagee requires that Mortgagor execute and record a separate collateral assignment of rents or separate assignments of any of the leases to Mortgagee, the terms of those assignments shall control in the event of a conflict with the terms of this Mortgage.

Mortgagor agrees that if any lessee under any of the leases shall fail to pay its rent on a timely basis or fulfill any material provision in said lease or if Mortgagor shall terminate or modify any of the leases without Mortgagee's prior written consent; or if Mortgagor shall suffer any default under the provisions of any *assignment of any lease given as additional security for the payment of the* Indebtedness and such default shall not be cured within the applicable grace period provided therein; then, at the option of Lender, and without notice to Mortgagor, the Indebtedness shall become immediately due.

12. <u>Mortgagor and Lien not Released</u>. From time to time Mortgagee may, at Mortgagee's option, without giving notice to or obtaining the consent of Mortgagor, its beneficiaries, or its successors or assigns or the consent of any junior lien holder, grantor, or tenant, without liability on Mortgagee's part and notwithstanding Mortgagor's breach of any covenant, agreement, or condition, (a) release anyone primarily or secondarily liable on any of the Indebtedness; (b) accept a renewal note or notes of the Note; (c) release from the lien of this Mortgage any part of the Premises; (d) take or release other or additional security for the Indebtedness; (e) consent to any plat, map, or plan of the Premises or declaration of condominium as to the Premises (in whole or in part); (f) consent to the granting of any easement; (g) join in any extension or subordination agreement; (h) agree in writing with Mortgagor to modify the rate of interest or period of amortization of the Note or change the time of payment or the amount of the installments payable thereunder; and (i) waive or fail to exercise any right, power, or remedy granted by law or in this Mortgage or in any other instrument given at any time to evidence or secure the payment of the Indebtedness.

Any actions taken by Mortgagee pursuant to the terms of this Paragraph 12 shall not impair or affect (a) the obligation of Mortgagor or Mortgagor's successors or

assigns to pay any sums at any time secured by this Mortgage and to observe all of the covenants, agreements, and conditions herein contained; (b) the guaranty of any individual or legal entity for payment of the Indebtedness; and (c) the lien or priority of the lien hereof against the Premises.

Mortgagor shall pay to Mortgagee a reasonable service charge and such title insurance premiums and attorneys' fess (including those of in-house staff) as may be incurred by Mortgagee for any action described in this Paragraph 12 taken at the request of Mortgagor or its beneficiaries.

13.    <u>Records</u>. With respect to the Premises and its operations, Mortgagor shall keep proper books in accordance with generally accepted accounting principles consistently applied. Mortgagee shall have the right to examine the books at reasonable times as Mortgagee may elect. Upon request, Mortgagor shall furnish to Mortgagee within 60 days after the end of each calendar year, a financial statement of Mortgagor for the calendar year, in reasonable detail and stating in comparative form the figures as of the end of the previous calendar year, including statements of income and expense relating to operations of the Premises, certified by an independent certified public accountant acceptable to Mortgagee. In addition, Mortgagor shall furnish to Mortgagee, in a form acceptable to Mortgagee, interim financial statements that Mortgagee may request, certified by Mortgagor.

14.    <u>Due on Sale or Further Encumbrance Clause.</u>  Mortgagor shall not, without the prior written consent of Mortgagee, effect, suffer or permit any conveyance, sale, assignment, transfer, lien, pledge, mortgage, security interest or other encumbrance or alienation (or any agreement to do any of the foregoing) of the Premises or any part thereof (a "Prohibited Transfer").

In determining whether or not to make the loan secured hereby, Mortgagee evaluated the background and experience of Mortgagor in owning and operating property such as the Premises, found it acceptable and relied and continues to rely upon same as the means of maintaining the value of the Premises which is Mortgagee's security for the Guaranty.  Mortgagor recognizes that Mortgagee is entitled to keep its loan portfolio at current interest rates by either making new loans at such rates or collecting assumption fees and/or increasing the interest rate on a loan, the security for which is purchased by a party other than the original Mortgagor.  Mortgagor further recognizes that any secondary or junior financing placed on the Premises, or the beneficial interest of beneficiaries in Mortgagor, (a) may *divert funds which could otherwise be used to pay the Note* guaranteed hereby; (b) could result in acceleration and foreclosure by any such junior encumbrance, which would force Mortgagee to take measures and incur expenses to protect its security; (c) would detract from the value of the Premises should Mortgagee come into possession thereof with the intention of selling them; and (d) would impair  Mortgagee's right to accept a deed in lieu of foreclosure, as a foreclosure by Mortgagee would be necessary to clear the title to the Premises.  In accordance with the foregoing and for the purposes of (i) protecting Mortgagee's security, both of repayment and of value of the Premises;

(ii) giving Mortgagee the full benefit of its bargain and contract with Mortgagor; (iii) allowing Mortgagee to raise the interest rate and collect assumption fees; and (iv) keeping the Premises free of subordinate financing liens, Mortgagor agree that if this Section 14 is a restraint on alienation, that it is a reasonable one.

15.    <u>Defaults and Acceleration of Indebtedness.</u>    If one or more of the following events of default shall occur:

    a.    default occurs in the due and punctual payment of principal or interest on the Note, this Mortgage or under the Guaranty;

    b.    default shall occur in the due observance or performance of any other covenant, agreement, or condition contained in this Mortgage and required to be kept or performed or observed by Mortgagor, including a Prohibited Transfer;

    c.    default shall occur in the due observance or performance of any covenant, agreement, or condition required to be kept or observed by Borrower in the Note or any guarantor thereof or in any other instrument given at any time to secure the payment of the Note;

    d.    Mortgagor, any guarantor of the Note or Borrower shall (i) file a petition for liquidation, reorganization, or adjustment of debt under the federal Bankruptcy Code or any similar law, state or federal, (ii) file an answer admitting insolvency or inability to pay debts, or (iii) fail to obtain a vacation or stay of involuntary proceedings within ten days;

    e.    any order for relief of Mortgagor or any guarantor of the Note or Borrower shall be entered in any case under the federal Bankruptcy Code or any similar law, state or federal, or a trustee or receiver shall be appointed for Mortgagor, or any guarantor of the Note or Borrower, or for all or the major part of the property of Mortgagor or of any guarantor of the Note or the Borrower in any voluntary or involuntary proceedings, or any court shall have taken jurisdiction of all or the major part of the property of Mortgagor or of any guarantor of the Note or the Borrower in any voluntary or involuntary proceedings for the reorganization, dissolution, liquidation, adjustment of debt, or winding up of Mortgagor, any guarantor of the Note or the Borrower and such trustee or receiver shall not be discharged or such jurisdiction not be relinquished or vacated or stayed on appeal or otherwise stayed within ten days;

    f.    Mortgagor or any guarantor of the Note or Borrower shall make an assignment for the benefit of creditors, or shall admit in writing its inability to pay its debts generally as they become due, or shall consent to the appointment of a receiver or trustee or liquidator of all or any major part of its property;

8

then and in any such event, the whole of the Indebtedness shall at once, at the option of Mortgagee, become immediately due and payable without notice to Mortgagor, and Mortgagee may immediately proceed to foreclose this Mortgage and to exercise any one or combination of remedies under this Mortgage or as permitted by law .

16.    <u>Foreclosure; Expense of Litigation.</u>  When the Indebtedness or any part thereof shall become due, whether by acceleration or otherwise, Mortgagee shall have the right to foreclose the lien of this Mortgage for such Indebtedness or any part thereof.  In any civil action to foreclose the lien hereof, there shall be allowed and included as additional Indebtedness in the order or judgment for foreclosure and sale all expenditures and expenses that may be paid or incurred by or on behalf of Mortgagee including, without limitation, expenditures for attorneys' fees, including those of in-house counsel, appraiser's fees, outlays for documentary and expert evidence, stenographers' charges, publication costs, and costs (which may be estimated as to items to be expended after entry of the order or judgment) of procuring all such abstracts of title, title searches and examinations, title insurance policies, and similar data and assurances with respect to the title as Mortgagee may deem reasonably necessary either to prosecute the civil action or to evidence to bidders at any sale that may be had pursuant to the order or judgment the true condition of the title to, or the value of, the Premises.  All expenditures and expense of the nature in this Paragraph 16 mentioned and such expenses and fees as may be incurred in the protection of the Premises and the maintenance of the lien of this Mortgage, including the fees of any attorneys employed by Mortgagee in any litigation or proceeding affecting this Mortgage, the Note, or the Premises, including probate, appellate and bankruptcy proceedings, or in preparation for the commencement or defense of any action or proceeding or threatened action or proceeding, shall be immediately due and payable by Mortgagor, with interest thereon at the rate set forth in the Note applicable to a period when a default exists thereunder, and shall be secured by this Mortgage.

At all times, Mortgagor shall appear in and defend any suit, action, or proceeding that might in any way, in the sole judgment of Mortgagee, affect the value of the Premises, the priority of this Mortgage, or the rights and powers of Mortgagee hereunder or under any document given at any time to secure the Indebtedness. Mortgagor shall, at all times, indemnify, hold harmless, and reimburse Mortgagee on demand for any and all loss, damage, expense, or cost, including cost of evidence of title and attorneys' fees, arising out of or incurred in connection with any such suit, action, or proceeding, and the sum of such expenditures, shall be secured by this Mortgage and shall bear interest after demand at the rate specified in the Note applicable to a period when a default exists thereunder, and such interest shall be secured hereby and shall be due and payable on demand.

17.    <u>Application of Proceeds of Foreclosure Sale.</u>  The proceeds of any foreclosure sale of the Premises shall be distributed and applied in the following order of priority:  first, on account of all costs and expenses incident to the foreclosure proceedings, including all such items as are mentioned in Paragraph 16 hereof;

second, to all other items that may under the terms hereof constitute secured indebtedness additional to that evidenced by the Note, with interest thereon as herein provided; third, to all principal and interest remaining unpaid on the Note; and fourth, to any parties entitled thereto as their rights may appear.

18.  Appointment of Receiver or Mortgagee in Possession.  Upon, or at any time after, the commencement of an action to foreclose this Mortgage, the court in which the action was commenced may, upon request of Mortgagee, appoint a receiver of the Premises either before or after foreclosure sale, without notice and without regard to the solvency or insolvency of Mortgagor at the time of application for a receiver and without regard to the then value of the Premises or whether the Premises shall be then occupied as homestead, and Mortgagee or any holder of the Note may be appointed as such receiver as Mortgagee in possession.  Such receiver or Mortgagee in possession shall have power to collect the rents, issues, and profits of the Premises during the pendency of the foreclosure action and, in case of a sale and a deficiency, during the full statutory period of redemption (if any), whether there shall be redemption or not, as well as during any further times (if any) when Mortgagor, except for the intervention of the receiver or Mortgagee in possession, would be entitled to collect the rents, issues, and profits, and all other powers that may be necessary or are usual in such cases for the protection, possession, control, management, and operation of the Premises during the whole of that period.  The court from time to time may authorize the receiver or Mortgagee in possession to apply the net income in its hands in payment in whole or in part of (a) the Indebtedness secured hereby or by any order or judgment foreclosing the lien of this Mortgage, or any tax, special assessment, or other lien that may be or become superior to the lien hereof or the lien of such order of judgment, provided that the application is made prior to foreclosure sale; or (b) the deficiency in case of a sale and deficiency.

19.  Rights Cumulative.  Each right, power, and remedy conferred on Mortgagee by this Mortgage and by all other documents evidencing or securing the Indebtedness and conferred by law and in equity is cumulative and in addition to every other right, power, and remedy, express or implied, given now or hereafter existing, at law and in equity; and each and every such right, power, and remedy may be exercised from time to time as often and in such order as may be deemed expedient by Mortgagee, and the exercise or the beginning of the exercise of one right, power, or remedy, and no delay or omission of, or discontinuance by, Mortgagee in the exercise of any right, power, or remedy accruing hereunder or arising otherwise shall impair any such right, power, or remedy or be construed to be a waiver of any default or acquiescence therein.

20.  Release upon Payment and Discharge of Mortgagor's Obligations.  Mortgagee shall release (in whole or partially) this Mortgage and the lien (in whole or partially) by proper instrument upon payment and discharge of all Indebtedness (or an applicable agreed portion) secured hereby (including any prepayment charges and late charges provided for herein or in the Note) and upon payment of a reasonable fee to Mortgagee for the preparation and execution of such proper instrument as shall be determined by Mortgagee in its absolute discretion.

10

21.   Giving Notice.  Any notice that either party hereto may desire or be required to give to the other party shall be in writing, and the mailing thereof, by certified mail addressed to Mortgagor or Mortgagee, as the case may be, at the respective addresses set forth on the first page of this Mortgage or at such other place as any party hereto may by notice in writing designate as the place of notice, shall constitute service of notice hereunder.

22.   Waiver of Defense.  No action for the enforcement of the lien or of any provision hereof shall be subject to any defense that would not be good and available to the party interposing it in an action at law on the Note.

23.   Waiver of Statutory Rights.  Mortgagor shall not and will not (nor shall any beneficiary of Mortgagor) apply for or avail itself of any appraisement, valuation, stay, extension, or exemption laws or any so-called "Moratorium Laws," now existing or hereafter enacted, in order to prevent or hinder the enforcement of foreclosure of the lien of this Mortgage, but hereby waives the benefit of such laws. Mortgagor, for itself and all who may claim through or under it, including its beneficiaries, waives any and all right to have the property and estates comprising the Premises marshaled upon any foreclosure of the lien of this Mortgage and agrees that any court having jurisdiction to foreclose this lien may order the Premises sold as an entirety.  Mortgagor does hereby expressly waive any and all rights of redemption from sale under any order or judgment of foreclosure of the lien of this Mortgage on behalf of Mortgagor, the trust estate, and all persons beneficially interested in it and each and every person, except judgment creditors of Mortgagor in its representative capacity and of the trust estate acquiring any interest in or title to the Premises subsequent to the date of this Mortgage.

24.   Environmental Matters. Mortgagor agrees to indemnify Mortgagee against, and hold it harmless from, all obligations and liabilities relating to the Premises arising out of claims made or suits brought for investigation, study, remedial work, monitoring, or other costs and expenses arising from or associated with response to any environmental matters, including but not limited to any (a) water pollution, air pollution, noise, odor, spills, leaks, or inadvertent discharges, emissions, or releases, or the generation, transportation, storage, treatment, or disposal of solid waste, including hazardous waste, hazardous substances, pollutants and contaminants; (b) injury, sickness, disease, or death of any person; or (c) damage to any property, regardless of whether the cause of the injury or damage occurred before or after the date of this Mortgage. Mortgagor further agrees that Mortgagee shall have no liability for any environmental contamination associated with Mortgagor's business or the Premises, and that any involvement of Mortgagee with Mortgagor's business to protect its security interest in the Premises shall not constitute Mortgagee as an "owner or operator" of Mortgagor's business for purposes of determining environmental liability. In any event, if Mortgagee becomes obligated, by judicial or administrative judgment or settlement of a claim, to pay any amounts for response to any environmental contamination associated or connected with Mortgagor's business or the Premises, any payment by Mortgagee shall be deemed additional Indebtedness

11

secured by the lien of this Mortgage, shall be immediately due and payable to Mortgagee, and shall bear interest until paid at the default interest rate specified in the Note.

25.    Small Business Administration.  The Loan secured by this lien was made under a United States Small Business Administration ("SBA") nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations:

a.    When SBA is the holder of the Note, this document and all documents evidencing or securing this Loan will be construed in accordance with federal law.

b.    Mortgagee or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notices, foreclosing liens, and other purposes.  By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability.  No Mortgagor or Guarantor may claim or assert against SBA any local or state law to deny any obligation of Mortgagor, or defeat any claim of SBA with respect to this Loan.

Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

26.    Revolving Credit.  In the event that this Mortgage secures a revolving credit note, this Mortgage shall secure not only the existing Indebtedness, but also future advances, whether they are obligatory or to be made at the option of the Mortgagee or otherwise, as are made within 20 years from the date hereof, to the same extent as if such future advances were made on the date of execution of this Mortgage, and although there may be no Indebtedness outstanding at the time any advance is made.  The total amount of Indebtedness that is secured hereby may increase or decrease from time to time.

Signed on the date set forth above.

MORTGAGOR

_Bernard M. Geers_
BERNARD M. GEERS

_Helen A. Geers_
HELEN A. GEERS, husband and wife, in joint tenancy

12

STATE OF ILLINOIS     )
                      ) ss
_Cook_____ COUNTY  )


The foregoing instrument was acknowledged before me on  _March 18_____ ,
2004, by Bernard M. Geers and Helen A. Geers, husband and wife, in joint tenancy.


```
"OFFICIAL SEAL"
Lisa Marie Hribal
Notary Public, State of Illinois
My Commission Exp. 09/22/2007
```

Subscribed and sworn to before me on
_March 18_____ , 2004.


_Lisa Marie Hribal_____
_Lisa Marie Hribal_____ , Notary Public
_Cook_____ County, Illinois
My Commission Expires: _9/22/07____


When recorded return to:

James M. Novara, Esquire
Hirt, MacArthur, Ruggirello,
Velardo, Novara & Ver Beek, P.C.
65 Southbound Gratiot Avenue
Mount Clemens, MI  48043
(586)  469-8660

13

## EXHIBIT "A"

## LEGAL DESCRIPTION

Property situated in the City of Chicago and described as follows:

Lot 9 in Block 3 in Albert Crane's Subdivision of the South ¾ of the West ¼ of the Southwest ¼ of Section 28, Township 39 North, Range 14, East of the Third Principal Meridian, in Cook County, Illinois.

Permanent Index No.  17-28-318-027

Commonly known as:  2920 Emerald

## EXHIBIT B

## PERMITTED ENCUMBRANCES

None



# EXHIBIT B –
# NOTE DATED MARCH 18, 2004



U.S. Small Business Administration

# NOTE

| SBA Loan # | PLP 708-236-4003 |
|---|---|
| SBA Loan Name | AQUA-PETS L.L.C. |
| Date | *March 18*, 2004 |
| Loan Amount | $509,000.00 |
| Interest Rate | WALL STREET JOURNAL PRIME RATE + 2.0% PER ANNUM |
| Borrower | AQUA-PETS L.L.C. |
| Operating Company | N/A |
| Lender | COMERICA BANK |

1.  PROMISE TO PAY:

    In return for the Loan, Borrower promises to pay to the order of Lender the amount of
    FIVE HUNDRED NINE THOUSAND AND 00/100 ($509,000.00) _____ Dollars,

    interest on the unpaid principal balance, and all other amounts required by this Note.

2.  DEFINITIONS:

    "Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

    "Guarantor" means each person or entity that signs a guarantee of payment of this Note.

    "Loan" means the loan evidenced by this Note.

    "Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

    "SBA" means the Small Business Administration, an Agency of the United States of America.

3.  PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

1. Maturity:  This Note will mature in 10 years from date of initial disbursement.

2. Repayment Terms:   The interest rate on this Note will fluctuate.  The initial interest rate is 6.00% per year.  This initial rate is the prime rate on the date SBA received the loan application, plus 2.00%.  The initial interest rate must remain in effect until the first change period begins.

Borrower must pay interest on the disbursed principal balance, plus principal of $5,651.00 every month, beginning one month from the month of initial disbursement on this Note; payments must be made on the same day as the date of initial disbursement on this Note in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted every calendar quarter (the "change period").

The "Prime Rate" is the prime rate in effect on the first business day of the month in which an interest rate change occurs, as published in the Wall Street Journal on the next business day.

The adjusted interest rate will be 2.00% above the Prime Rate.  Lender will adjust the interest rate on the first calendar day of each change period.  The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in *effect at the time of the earliest uncured payment default.  If there is no uncured payment default, the rate becomes fixed* at the rate in effect at the time of purchase.

Loan Prepayment:

Notwithstanding any provision in this Note to the contrary:

Borrower may prepay this Note.  Borrower may prepay 20% or less of the unpaid principal balance at any time without notice.  If Borrower prepays more than 20% and the Loan has been sold on the secondary market, Borrower must:

a. Give Lender written notice;

b. Pay all accrued interest; and

c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.

If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 10 years from date of initial disbursement.

Late Charge:  If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

4.  DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A.  Fails to do anything required by this Note and other Loan Documents;

B.  Defaults on any other loan with Lender;

C.  Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;

D.  Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;

E.  Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;

F.  Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;

G.  Fails to pay any taxes when due;

H.  Becomes the subject of a proceeding under any bankruptcy or insolvency law;

I.  Has a receiver or liquidator appointed for any part of their business or property;

J.  Makes an assignment for the benefit of creditors;

K.  Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;

L.  Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or

M.  Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5.  LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A.  Require immediate payment of all amounts owing under this Note;

B.  Collect all amounts owing from any Borrower or Guarantor;

C.  File suit and obtain judgment;

D.  Take possession of any Collateral; or

E.  Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6.  LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A.  Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;

B.  Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;

C.  Release anyone obligated to pay this Note;

D.  Compromise, release, renew, extend or substitute any of the Collateral; and

E.  Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7.   WHEN FEDERAL LAW APPLIES:

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8.   SUCCESSORS AND ASSIGNS:

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9.   GENERAL PROVISIONS:

A.   All individuals and entities signing this Note are jointly and severally liable.
B.   Borrower waives all suretyship defenses.
C.   Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.
D.   Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.
E.   Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.
F.   If any part of this Note is unenforceable, all other parts remain in effect.
G.   To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10.  STATE-SPECIFIC PROVISIONS:

None.

11.  BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

BORROWER:

AQUA-PETS L.L.C.

By:  Keith D. Geers
Its:   Member

By:  Linda S. Geers
Its:   Member

# EXHIBIT C –

## UNCONDITIONAL GUARANTEE (BERNARD M. GEERS) DATED MARCH 18, 2004

## UNCONDITIONAL GUARANTEE (HELEN A. GEERS) DATED MARCH 18, 2004



U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | PLP 708-236-4003 |
|---|---|
| SBA Loan Name | AQUA-PETS L.L.C. |
| Guarantor | BERNARD M. GEERS |
| Borrower | AQUA-PETS L.L.C. |
| Lender | COMERICA BANK |
| Date | *March 18*, 2004 |
| Note Amount | $509,000.00 |

1.  GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2.  NOTE:

The "Note" is the promissory note dated *March 18*, 2004 in the principal amount of

FIVE HUNDRED NINE THOUSAND AND 00/100 ($509,000.00) Dollars,

from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3.  DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4.   LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.   Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.   Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.   Release any Borrower or any guarantor of the Note;

D.   Compromise or settle with the Borrower or any guarantor of the Note;

E.   Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.   Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.   Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.   Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.   FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations.  Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes.  By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability.  As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.   RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.   Guarantor waives all rights to:
    1)   Require presentment, protest, or demand upon Borrower;
    2)   Redeem any Collateral before or after Lender disposes of it;
    3)   Have any disposition of Collateral advertised; and
    4)   Require a valuation of Collateral before or after Lender disposes of it.

B.   Guarantor waives any notice of:
    1)   Any default under the Note;
    2)   Presentment, dishonor, protest, or demand;
    3)   Execution of the Note;
    4)   Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
    5)   Any change in the financial condition or business operations of Borrower or any guarantor;
    6)   Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
    7)   The time or place of any sale or other disposition of Collateral.

C.   Guarantor waives defenses based upon any claim that:
    1)   Lender failed to obtain any guarantee;
    2)   Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
    3)   Lender or others improperly valued or inspected the Collateral;
    4)   The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;

6) Lender did not dispose of any of the Collateral;

7) Lender did not conduct a commercially reasonable sale;

8) Lender did not obtain the fair market value of the Collateral;

9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. GENERAL PROVISIONS:

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

None.

11.   GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12.   GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

GUARANTOR:

_Bernard M. Geers_
BERNARD M. GEERS

Subscribed and sworn to before me this _18th_ day of _March_ , 2004, by Bernard M. Geers.

_____, Notary Public
_Cook_ County, Illinois
My Commission Expires: _3/18/06_

"OFFICIAL SEAL"
L. David Smith
Notary Public, State of Illinois
My Commission Exp. 03/18/2006



**U.S. Small Business Administration**

# UNCONDITIONAL GUARANTEE

| | |
|---|---|
| SBA Loan # | PLP 708-236-4003 |
| SBA Loan Name | AQUA-PETS L.L.C. |
| Guarantor | HELEN A. GEERS |
| Borrower | AQUA-PETS L.L.C. |
| Lender | COMERICA BANK |
| Date | *March 18*, 2004 |
| Note Amount | $509,000.00 |

1. GUARANTEE:

   Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

2. NOTE:

   The "Note" is the promissory note dated *March 18*, 2004 in the principal amount of FIVE HUNDRED NINE THOUSAND AND 00/100 ($509,000.00) Dollars, from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

3. DEFINITIONS:

   "Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

   "Loan" means the loan evidenced by the Note.

   "Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

   "SBA" means the Small Business Administration, an Agency of the United States of America.

4.    LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.    Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.    Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.    Release any Borrower or any guarantor of the Note;

D.    Compromise or settle with the Borrower or any guarantor of the Note;

E.    Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.    Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.    Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.    Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.    FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.    RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.    Guarantor waives all rights to:
    1)    Require presentment, protest, or demand upon Borrower;
    2)    Redeem any Collateral before or after Lender disposes of it;
    3)    Have any disposition of Collateral advertised; or
    4)    Require a valuation of Collateral before or after Lender disposes of it.

B.    Guarantor waives any notice of:
    1)    Any default under the Note;
    2)    Presentment, dishonor, protest, or demand;
    3)    Execution of the Note;
    4)    Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
    5)    Any change in the financial condition or business operations of Borrower or any guarantor;
    6)    Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
    7)    The time or place of any sale or other disposition of Collateral.

C.    Guarantor waives defenses based upon any claim that:
    1)    Lender failed to obtain any guarantee;
    2)    Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
    3)    Lender or others improperly valued or inspected the Collateral;
    4)    The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5)  Lender impaired the Collateral;

6)  Lender did not dispose of any of the Collateral;

7)  Lender did not conduct a commercially reasonable sale;

8)  Lender did not obtain the fair market value of the Collateral;

9)  Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;

10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;

11) Lender made errors or omissions in Loan Documents or administration of the Loan;

12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor;

13) Lender impaired Guarantor's suretyship rights;

14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;

15) Borrower has avoided liability on the Note; or

16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7.   DUTIES AS TO COLLATERAL:

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8.   SUCCESSORS AND ASSIGNS:

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9.   GENERAL PROVISIONS:

A.   ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B.   SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C.   SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D.   JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E.   DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F.   FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G.   LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H.   ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I.   SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J.   CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

None.

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

GUARANTOR:

*Helen A. Geers*

HELEN A. GEERS

Subscribed and sworn to before me this __18th__ day of __March__ _____, 2004, by Helen A. Geers.

"OFFICIAL SEAL"
Lisa Marie Hribal
Notary Public, State of Illinois
My Commission Exp. 09/22/2007

*Lisa Marie Hribal*

*Lisa Marie Hribal* , Notary Public

*Cook* County, Illinois

My Commission Expires: __9/22/07__